# EXHIBIT 1

eFiled
7/14/2025 3:24:36 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

WILBUR HILIGH,

9214 Pinehurst dr

Fort Washington, MD 20744,

Plaintiff,


v.                                   Case No. <u>2025-CAB-004550</u>


DUNCAN & HOPKINS, P.C.

11130 Main Street Suite 310

Fairfax, VA 22030- 5009,

And

McCHESNEY & DALE, P.C.,

4710 Bethesda Ave Suite 205

Bethesda, MD 20814,

And

McCHESNEY, DUNCAN & DALE, P.C.

8401 Connecticut AVENUE SUITE 1003

CHEVY CHASE, MD 20815,

Defendants


**PLAINTIFF'S COMPLAINT FOR DAMAGES**

**NOW COMES** Plaintiff Wilbur Hiligh, appearing pro se, and respectfully submits this Complaint for Damages against Defendants Duncan & Hopkins, P.C., McChesney & Dale, P.C. and McChesney, Duncan & Dale P.C. , and states as follows:

## I.    NATURE OF THE ACTION

This action arises from Defendants' systematic pattern of fraudulent concealment, professional misconduct, and violations of fiduciary duties spanning over two decades. Defendants engaged in regurgitated misrepresentations before this Court and other tribunals, deliberately concealing multiple insurance policies and corporate relationships to defraud Plaintiff of rightful compensation.

This Complaint seeks damages for professional negligence, breach of fiduciary duty, consumer protection violations, civil conspiracy, aiding and abetting, unjust enrichment, intentional interference with business relations, violations of the ***Racketeer Influenced and Corrupt Organizations Act (RICO)***, and ***judicial estoppel*** based on contradictory positions taken by Defendants' agents in multiple proceedings.

## II.    JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to ***D.C. Code § 11-921,*** as this action involves claims arising under ***District of Columbia law*** and seeking damages in excess of the jurisdictional minimum.

- Venue is proper in this Court as Defendants conducted business in the District of Columbia and the alleged misconduct occurred within this jurisdiction.

## III.    PARTIES

- Plaintiff Wilbur Hiligh is a disabled individual residing at 9214 Pinehurst Drive, Fort Washington, Maryland 20744.

- Defendant Duncan & Hopkins, P.C. is a professional corporation engaged in the practice of law in the District of Columbia and is required to maintain professional liability insurance under D.C. Bar regulations.

- Defendant McChesney & Dale, P.C. is a professional corporation engaged in the practice of law in the District of Columbia, maintaining offices and conducting business within this jurisdiction.

- Defendant McChesney, Duncan & Dale, P.C. Was a professional corporation engaged in the practice of law in the District of Columbia, maintaining offices and conducting business within this jurisdiction.

## IV. FACTUAL ALLEGATIONS

I.  Background and Attorney-Client Relationship

At all relevant times, Defendants represented Plaintiff in various legal matters, creating attorney-client relationships that imposed fiduciary duties of care, loyalty, and candor.

During the course of representation, Defendants had actual knowledge of multiple insurance policies covering legal malpractice claims, including policies maintained by Duncan & Hopkins, P.C., McChesney & Dale, P.C. and McChesney, Duncan & Dale P.C..

II.  Pattern of Fraudulent Concealment Evidenced by Exhibits 1-13

Despite statutory obligations under **D.C. Code § 31-2403.01** requiring disclosure of all applicable insurance policies, Defendants deliberately concealed the existence of multiple policies from Plaintiff during settlement negotiations.

- Exhibit 1 (dated March 30, 1994) demonstrates that John C. Duncan III was listed as President and William Hopkins as Director of McChesney, Duncan & Dale, P.C., directly contradicting subsequent sworn declarations by Charles Fuller claiming the firm ceased operations in November 1993.

- Exhibit 2 provides official state dissolution records confirming that McChesney, Duncan & Dale, P.C., which shared the same address as McChesney & Dale, P.C. at the time period in question did not formally dissolve until September 30, 2000—approximately

eight months after the legal malpractice tort of January 31, 2000 by Duncan & Hopkins, P.C..

- Exhibit 3 contains Charles Fuller's sworn declaration claiming McChesney, Duncan & Dale, P.C. ceased operating in November 1993, which is directly contradicted his very own Superiors signed State documents in Exhibits 1, 2, and 12.

- Exhibits 4 compared with Exhibits 1 and 12 demonstrates that McChesney & Dale, P.C. operated from the same address as McChesney, Duncan & Dale, P.C., with letterhead listing David A. Connolly and James S. Powell in Exhibit 4, suggesting continuity of operations between the supposedly separate entities.

- Exhibit 5 reveals strategic post-malpractice restructuring, showing that Charles Fuller served as an officer of McChesney & Dale, P.C. as of August 25, 2000—just one month before the dissolution of McChesney, Duncan & Dale, P.C. In Exhibit 2.

- Exhibit 6 establishes that key corporate documents were listed as "unavailable" by the Virginia State Corporation Commission during Plaintiff's settlement negotiations in Hiligh I, making it impossible for Plaintiff to challenge Fuller's sworn declarations at that time.

- Exhibits 7, 8, 9, and 10 demonstrate that William S. Sands represented and advised Plaintiff for at least three years with knowledge of the entire ordeal, yet never advised Plaintiff to seek counsel for malpractice regarding Plaintiff's third-party claim nor disclosed the status of the third-party claim, see ***Hiligh v. Sands (2018)***.

- Exhibit 11 confirms William S. Hopkins as Plaintiff's counsel from 2003, after the death of Plaintiff's original attorney Charles Monroe, until Hopkins' death in 2014.

- Exhibit 12 contains explicit statements from Duncan confirming his position as President of McChesney, Duncan & Dale, P.C. after 1993, and stating that Duncan & Hopkins, P.C.'s address served as headquarters for all three firms in 1994, with this arrangement in Exhibit 1 remaining intact until September 30, 2000, some 8 months after the Legal Malpractice Tort of January 31, 2000 by Duncan & Hopkins, P.C..

- Exhibit 13 presents evidence from McChesney & Dale, P.C.'s website implying an ongoing "Of Counsel" relationship with John C. Duncan III and/or William S. Hopkins, both former board members of the predecessor firm.

III. Corporate Restructuring to Shield Assets

Following the initial malpractice incident on January 31, 2000, Defendants engaged in strategic corporate restructuring designed to shield insurance assets and limit Plaintiff's recovery. Exhibit 5

These restructuring activities included deliberate changes to shareholder structures and dissolution of predecessor entities to obscure corporate relationships and available insurance coverage. Exhibits 1, 2 and 5

## COUNT I: PROFESSIONAL NEGLIGENCE/LEGAL MALPRACTICE

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Under **District of Columbia law,** the elements for a legal malpractice claim are: "(1) the existence of an attorney-client relationship; (2) a duty arising from that relationship; (3) breach of that duty; and (4) proximate causation of damage to the client." **Carranza v. Fraas, 2011 D.C. Super. LEXIS 17 (D.C. Super. Ct. 2011).**

- The discovery rule applies to legal malpractice claims in the District of Columbia, with the right of action accruing "when the plaintiff has knowledge of, or by the exercise of reasonable diligence, should have knowledge of the existence of the injury; Its cause in fact; and some evidence of wrongdoing."

- Defendants owed Plaintiff professional duties of care consistent with the standards expected of competent attorneys practicing in the District of Columbia.

- Defendants breached these duties by failing to disclose material information about available insurance coverage (as evidenced by Exhibits 1-13), making misrepresentations about corporate structures, and failing to adequately protect Plaintiff's interests.

- Defendants' conduct fell below the standard of care expected of reasonable attorneys, constituting professional negligence.

As a direct and proximate result of Defendants' negligence, Plaintiff suffered damages including lost opportunity to pursue claims against all available insurance policies.

**COUNT II: BREACH OF FIDUCIARY DUTY**

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Under ***District of Columbia law***, "the elements for a breach of fiduciary duty cause of action are (1) proof of a fiduciary relationship and duty, (2) breach of that fiduciary duty, and (3) damages directly caused by the defendant's breach." ***Deblinger v. Sani-Pine Prods. Co., 107 A.D.3d 659, 660 (N.Y. App. Div. 2013).***

- The attorney-client relationship between Plaintiff and Defendants created fiduciary duties requiring the highest standards of loyalty, care, and candor.

- Defendants breached these fiduciary duties by concealing material information about insurance coverage (as documented in Exhibits 1-13), making false representations about corporate relationships and prioritizing their own interests over Plaintiff's.

- ***D.C. Code § 28:3-307*** establishes specific rules regarding notice of breach of fiduciary duty, which Defendants violated through their pattern of concealment and misrepresentation.

As a result of these breaches, Plaintiff is entitled to damages and restitution.

## *COUNT III: VIOLATIONS OF DC CONSUMER PROTECTION ACT*

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Defendants' conduct constitutes unfair and deceptive trade practices in violation of ***D.C. Code § 28-3904***, including material misrepresentations and omissions regarding available insurance coverage.

- As established in ***District of Columbia v. Exxon Mobil Corp***., the ***D.C. Consumer Protection Procedures Act (CPPA)*** prohibits "deceptive and unfair conduct" and provides for restitution, damages, civil penalties, and attorney's fees.

- Defendants' selective disclosure of only certain insurance policies while concealing others (as evidenced by Exhibits 1-13) constitutes deceptive practices designed to limit Plaintiff's recovery.

Plaintiff seeks actual damages, statutory damages, and compensatory fees under the ***Consumer Protection Procedures Act.***

## COUNT IV: CIVIL CONSPIRACY

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Under ***District of Columbia law***, to establish civil conspiracy, a plaintiff must prove "all four elements of a civil conspiracy": (1) two or more persons (Duncan and Fuller) ; (2) an unlawful objective (non disclosure of policies) ; (3) an agreement on the objective (signed settlement agreement) ; and (4) overt acts in furtherance of the conspiracy

causing damages (Exhibit 3, which was regurgitated in 3 separate DC Court jurisdictions).

- Defendants entered into an agreement to conceal insurance policies and misrepresent corporate relationships for the unlawful purpose of limiting Plaintiff's recovery.

- The conspiracy is evidenced by the coordinated misrepresentations documented in Exhibits 1-13, including Fuller's false sworn declarations contradicted by his own corporate superiors' signed documents.

Each Defendant is jointly and severally liable for damages caused by the conspiracy.

## COUNT V: AIDING AND ABETTING

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Under ***District of Columbia law***, aiding and abetting requires: "(1) That the accused had specific intent to facilitate the commission of a [tort] by another; (2) That the accused had the requisite intent of the underlying substantive offense; (3) That the accused assisted or participated in the commission of the underlying substantive offense; and (4) That someone committed the underlying offense."

- Each Defendant aided and abetted the other's tortious conduct by providing substantial assistance and encouragement to the scheme of concealment and misrepresentation documented in Exhibits 1-13.

- Defendants had knowledge of the wrongful conduct and provided material support to continue the fraudulent scheme.

Defendants' conduct was a substantial factor in causing Plaintiff's damages.

## COUNT VI: UNJUST ENRICHMENT

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Under **District of Columbia law,** "unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." **Euclid St., LLC v. District of Columbia Water & Sewer Auth., 41 A.3d 453, 463 n.10 (D.C. 2012).**

- Defendants were unjustly enriched by retaining benefits that rightfully belong to Plaintiff, including insurance proceeds and avoided liability through their fraudulent concealment scheme.

- It would be inequitable for Defendants to retain these benefits obtained through fraudulent concealment and misrepresentation as documented in Exhibits 1-13.

Plaintiff seeks restitution of all amounts by which Defendants were unjustly enriched.

## COUNT VII: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Plaintiff had prospective business relationships and economic advantages that were intentionally interfered with by Defendants' fraudulent conduct.

- Defendants had knowledge of these relationships and purposely caused interference through their pattern of misrepresentation and concealment documented in Exhibits 1-13.

Defendants were not authorized to interfere with these relationships, and Plaintiff suffered damages as a result.

## COUNT VIII: VIOLATIONS OF *THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)*

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- Defendants conducted the affairs of an enterprise through a pattern of racketeering activity, including mail fraud and wire fraud in connection with their misrepresentations documented in Exhibits 1-13.

- The pattern of racketeering activity involved at least two predicate acts within the statutory timeframe, demonstrating continuity and relationship.

- Defendants' *RICO* violations directly and proximately caused injury to Plaintiff's business and property interests.

Plaintiff seeks treble damages and compensatory fees under *18 U.S.C. § 1964(c)* .

## COUNT IX: JUDICIAL ESTOPPEL

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- The **doctrine of judicial estoppel** precludes a party from adopting a position in a legal proceeding that is clearly inconsistent with a position previously asserted and accepted by a court.

- Defendant Charles Fuller, acting as agent and representative of McChesney & Dale, P.C., made sworn declarations in the District of Columbia District Court, Superior Court, and Court of Appeals asserting that McChesney, Duncan & Dale, P.C. ceased operations in November 1993 and more misrepresentations in the highlighted text of Exhibit 3.

- These sworn declarations are directly contradicted by multiple executive-signed corporate documents (Exhibits 1, 2, 12, and others) executed by Fuller's own corporate superiors, including John C. Duncan III as President and William Hopkins as Director, demonstrating that the McChesney, Duncan & Dale P.C. firm remained "operational with active leadership until its formal dissolution on September 30, 2000.

- Fuller's earlier sworn positions were accepted by multiple courts and tribunals, as evidenced by reliance on his declarations in prior rulings and proceedings.

- The stark contradiction between Fuller's sworn statements and the documentary evidence signed by his corporate superiors creates a clear inconsistency that undermines the integrity of judicial proceedings.

Allowing Defendants to maintain their current position would grant them an unfair advantage and impose an unfair detriment on Plaintiff, who relied on the accuracy of these declarations to his detriment during settlement negotiations and legal proceedings.

## COUNT X: DECLARATORY JUDGMENT

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

- A justiciable controversy exists regarding the extent of Defendants' insurance coverage and their obligations to disclose such coverage under ***D.C. Code § 31-2403.01.***

- Plaintiff seeks a declaratory judgment establishing Defendants' duties and their violations of such duties as evidenced by Exhibits 1-13.

## COUNT XI: VIOLATIONS OF DC RULES OF PROFESSIONAL CONDUCT 8.4(c) AND 8.4(d)

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Under **DC Rules of Professional Conduct Rule 8.4(c),** "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Under **DC Rules of Professional Conduct Rule 8.4(d),** "It is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice."

Defendants violated **Rule 8.4(c)** by making material misrepresentations about corporate structures (Exhibits 1-3, 12) and concealing multiple insurance policies in violation of **D.C. Code § 31-2403.01.**

Defendants violated **Rule 8.4(d)** by submitting false sworn declarations to multiple courts and tribunals, seriously interfering with the administration of justice.

As established, **Rule 8.4(d)** includes "failure to cooperate with court proceedings" and "tendering false information to courts," which Defendants committed through Fuller's contradictory sworn statements and deliberate omissions.

## COUNT XII: CONSPIRACY TO VIOLATE PROFESSIONAL CONDUCT RULES

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Under **DC Rules of Professional Conduct Rule 8.4(a)**, "It is professional misconduct for a lawyer to violate or attempt to violate the **Rules of Professional Conduct**, knowingly assist or induce another to do so, or do so through the acts of another."

Defendants violated **Rule 8.4(a)** by knowingly assisting and inducing each other to violate **Rules 8.4(c)** and **8.4(d)** through coordinated misrepresentations and concealment schemes.

**Rule 8.4(a)** "prohibits violations 'through the acts of another' and knowingly assisting or inducing another to violate or attempt to violate the rules."

Each Defendant is liable for the professional misconduct of the others under the "**through the acts of another" provision**.

## COUNT XIII: FRAUDULENT BILLING AND FEE VIOLATIONS

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Recent **RICO** cases against law firms for "padded and inflated bills for allegedly 'unworked' and phantom time," as seen in the Ford Motor Company case against California lawyers.

Defendants engaged in fraudulent billing practices by:

- Charging fees while concealing conflicts of interest

- Billing for services that were compromised by undisclosed relationships

- Collecting fees while failing to provide competent representation due to concealed conflicts

Under **In re Alexei, 319 A.3d 404 (D.C. 2024),** "lawyers do not earn any part of an advanced flat fee unless and until all legal services under that flat fee are complete."

Defendants' concealment of material information rendered their legal services incomplete and compromised, requiring disgorgement of all fees collected.

## COUNT XIV: VIOLATIONS OF INSURANCE DISCLOSURE STATUTES

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**D.C. Code § 31-2403.01** mandates that insurers "shall disclose the limits of coverage, of all policies, regardless of whether the insurer contests the applicability of the policy to the claim."

"An insurer, and the employees and agents of an insurer, may not be civilly or criminally liable for disclosure of the required documentation."

Defendants violated this statute by failing to disclose multiple applicable insurance policies during settlement negotiations ( Charles Monroe, William S. Hopkins, Roger Heald, Thomas Hogan, McChesney & Dale, P.C., McChesney, Duncan & Dale, P.C. Policies, etc.).

The statute provides a private right of action for violations, and Plaintiff seeks damages for Defendants' statutory violations.

**COUNT XV: ABUSE OF PROCESS**

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Defendants abused the judicial process by filing false sworn declarations (Exhibit 3, regurgitated in 2 additional jurisdictions) while possessing contradictory evidence (Exhibits 1, 2, 12).

As established, **judicial estoppel** "protects the integrity of the judicial process" and may be invoked sua sponte by courts to prevent manipulation.

Defendants' systematic filing of contradictory positions across multiple proceedings constitutes abuse of process designed to manipulate court outcomes.

## COUNT XVI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Defendants' conduct was extreme and outrageous, involving deliberate deception of a disabled client over two decades.

Defendants' actions were calculated to cause severe emotional distress by depriving Plaintiff of rightful compensation and prolonging litigation through false representations.

Plaintiff suffered severe emotional distress as a direct result of Defendants' outrageous conduct, including roughly 25 preventable deceased and incarcerated relatives between 2023 and 2025 on one side of Plaintiff's family alone.

## COUNT XVII: VIOLATION OF LONG-ARM JURISDICTION CONSPIRACY PROVISIONS

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Under **DC Code § 13-423(a)**, courts may exercise personal jurisdiction over persons who commit tortious acts in the District of Columbia.

As established, conspiracy-based jurisdiction requires "a **prima facie** showing of all four elements of a civil conspiracy."

Defendants' conspiracy involved tortious acts committed in the District of Columbia, including filing false declarations and concealing insurance information.

## COUNT XVIII: PATTERN OF PROFESSIONAL MISCONDUCT UNDER RICO

Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Recent **RICO** cases against law firms focus on "operational or management conduct violating the statute" rather than mere "legal services."

Defendants went beyond providing legal advice and actively managed a fraudulent enterprise through:

- Strategic corporate restructuring (Exhibit 5)

- Coordinated false testimony across multiple proceedings (Exhibit 3 from The District Court of the District of Columbia regurgitated in DC Superior Court and DC Court of Appeals)

- Systematic concealment of required insurance disclosures (non-disclosure of Charles Monroe, William S. Hopkins, Roger Heald, Thomas Hogan, McChesney & Dale, P.C., McChesney, Duncan & Dale, P.C. and related entities policies, etc.)


This operational misconduct removes Defendants from traditional "legal services" immunity and subjects them to full *RICO* liability.


## CONCLUSION

This case represents far more than a dispute between attorney and client—it epitomizes a systematic corruption of the legal profession's most sacred principles and constitutes an unprecedented assault on the integrity of our judicial system. The Defendants' conduct transcends mere professional negligence and ventures into the realm of organized criminal enterprise, involving calculated fraud, deliberate deception, and coordinated manipulation of multiple courts and tribunals through a pattern of misconduct spanning over two decades.


**The Irrefutable Documentary Evidence**

The documentary evidence contained in Exhibits 1-13 creates an unassailable record of Defendants' systematic misconduct that cannot be dismissed as inadvertent error or professional disagreement. These exhibits reveal a sophisticated scheme of deception that strikes at the very foundation of attorney-client relations and judicial integrity. When Charles Fuller swore under oath in multiple proceedings—the District of Columbia District Court, Superior Court, and Court of Appeals—that McChesney, Duncan & Dale, P.C. ceased operations in November 1993, he was directly contradicted by official corporate documents bearing the signatures of his own corporate superiors, including John C. Duncan III as President and William Hopkins as Director.

This contradiction is not a matter of interpretation or legal technicality—it represents a fundamental breach of the oath to tell the truth that forms the bedrock of our adversarial system. The fact that Fuller regurgitated these same false statements across three separate judicial proceedings demonstrates not inadvertent error but deliberate, calculated perjury designed to manipulate court outcomes and conceal critical information from both opposing parties and the courts themselves.

**Judicial Estoppel as Guardian of Judicial Integrity**

The ***doctrine of judicial estoppel,*** as applied in this case, serves as more than a procedural safeguard—it represents a critical bulwark against the systematic manipulation of our courts by those who would exploit their privileged position as officers of the court. The stark contradiction between Fuller's sworn statements and the executive-signed corporate documents of his

superiors (Exhibits 1, 2, 4, and 12) exposes not merely inconsistent testimony but a calculated effort to deceive multiple courts across different proceedings.

As established, the D.C. Court of Appeals has confirmed that *judicial estoppel* "protects the integrity of the judicial process" and may be invoked *sua sponte* by courts to prevent precisely this type of manipulation. The precedential nature of this doctrine recognizes that when attorneys systematically present contradictory sworn statements to different tribunals, they undermine the very foundation upon which our adversarial system depends—the presumption that officers of the court will present truthful information to aid in the search for justice.

**Consumer Protection Violations in the Legal Services Context**

The application of the ***D.C. Consumer Protection Procedures Act*** represents a particularly significant aspect of this case, as it recognizes that legal services are not immune from consumer protection laws when attorneys engage in deceptive practices. The ***CPPA*** prohibits "deceptive and unfair conduct" and provides for treble damages, statutory damages of $1,500 per violation, and attorney's fees. Defendants' selective disclosure of insurance policies while concealing others constitutes precisely the type of material misrepresentation that the Act was designed to prevent.

The significance of this application extends beyond this individual case—it establishes that attorneys who engage in deceptive trade practices cannot shield themselves behind professional

privilege when their conduct violates fundamental consumer protection principles. The Act's provision that liability may be established "regardless of whether any consumer is in fact misled, deceived, or damaged" recognizes that the harm extends beyond individual victims to the integrity of the marketplace itself.

**_RICO_ Liability and the Evolution of Law Firm Accountability**

The _RICO_ violations alleged in this case reflect a broader evolution in how courts view law firm misconduct. The search results reveal recent cases, including the Ford Motor Company litigation against California lawyers, where courts have recognized that law firms can be held liable under _RICO_ when they engage in "operational or management conduct violating the statute" rather than merely providing "legal services." This distinction is crucial because it recognizes that when attorneys move beyond providing legal advice to actively managing fraudulent enterprises, they forfeit traditional professional immunity.

The pattern of racketeering activity evidenced by Exhibits 1-13 demonstrates precisely this type of operational misconduct. Defendants did not merely provide legal advice—they actively managed and coordinated a scheme involving strategic corporate restructuring (Exhibit 5), systematic concealment of required insurance disclosures, and coordinated false testimony across multiple proceedings. This operational control of the fraudulent enterprise subjects them to the full force of _RICO_ liability, including treble damages and attorney's fees.

**Professional Conduct Violations and Systemic Reform**

The violations of *DC Rules of Professional Conduct 8.4(a), (c), and (d)* represent more than individual ethical breaches—they demonstrate a systematic failure of professional self-regulation that demands judicial intervention. *Rule 8.4(a)*'s prohibition on violations "through the acts of another" and "knowingly assisting or inducing another" to violate the rules recognizes that professional misconduct often involves coordination among multiple attorneys.

Furthermore, *Rule 8.4(a)* creates liability for "incomplete and indirect violations as well as attempts," recognizing that the integrity of the legal profession depends not only on individual compliance but on attorneys' obligation to prevent and report misconduct by their colleagues. Defendants' coordinated scheme to conceal insurance policies and misrepresent corporate relationships violates this fundamental principle and demonstrates why professional self-regulation alone is insufficient to address systematic misconduct.

**The Insurance Disclosure Framework and Statutory Violations**

*D.C. Code § 31-2403.01*'s mandate that insurers "shall disclose the limits of coverage, of all policies, regardless of whether the insurer contests the applicability of the policy to the claim" represents a legislative recognition that full disclosure of insurance information is essential to fair resolution of legal disputes. Whereas, it is confirmed that "An insurer, and the employees and agents of an insurer, may not be civilly or criminally liable for disclosure of the required documentation," removing any legitimate excuse for withholding such information.

Defendants' systematic violation of this disclosure requirement represents more than a technical statutory violation—it undermines the entire framework that the legislature established to promote fair and efficient resolution of legal disputes. The statute's recognition that disclosure serves important public policy objectives makes Defendants' concealment particularly egregious, as it subverts not only individual rights but the broader public interest in transparent legal proceedings.

**The Broader Implications for Legal System Integrity**

This case presents fundamental questions about the accountability of legal professionals and the adequacy of existing oversight mechanisms. When attorneys systematically deceive courts, conceal required disclosures, and coordinate fraudulent schemes across multiple proceedings, they threaten not only individual clients but the integrity of the entire legal system. The fact that this misconduct continued for over two decades, across multiple proceedings and jurisdictions, demonstrates the inadequacy of traditional professional discipline mechanisms to address sophisticated, coordinated misconduct.

The Court's intervention in this case serves multiple critical functions beyond providing justice for this individual plaintiff. First, it establishes that sophisticated procedural manipulation cannot shield attorneys from accountability for fundamental misconduct. Second, it recognizes that consumer protection laws apply to legal services when attorneys engage in deceptive practices. Third, it confirms that ***RICO*** liability extends to law firms that engage in operational misconduct

rather than merely providing legal advice. Fourth, it demonstrates that *judicial estoppel* serves as a critical safeguard against systematic manipulation of court proceedings.

## The Imperative for Comprehensive Relief

The comprehensive relief sought in this complaint—including compensatory damages, punitive damages, treble damages under *RICO*, statutory damages under the *Consumer Protection Act*, fee disgorgement, professional conduct sanctions, and injunctive relief—reflects the multifaceted nature of Defendants' misconduct and the need for equally comprehensive remedies. Traditional damage awards alone would be insufficient to address the systematic nature of this misconduct or to deter similar conduct by other legal professionals.

The request for professional responsibility referrals recognizes that judicial remedies must be complemented by professional discipline to ensure that attorneys who engage in such misconduct face appropriate consequences within the profession itself. The request for injunctive relief acknowledges that monetary damages alone cannot undo the harm to judicial integrity and that prospective relief is necessary to prevent continued misconduct.

## A Call for Systemic Reform

This case ultimately represents a call for systemic reform of how the legal profession polices itself and how courts address sophisticated attorney misconduct. The evidence contained in Exhibits 1-13 provides not only a comprehensive foundation for the claims alleged but also a

roadmap for identifying and addressing similar misconduct in other cases. The patterns revealed here—strategic corporate restructuring to shield assets, systematic concealment of required disclosures, coordinated false testimony across multiple proceedings—likely exist in other contexts and demand systematic attention from both the profession and the courts.

The Court's Intervention in this case sends a critical message that the legal profession's privileged position in society comes with corresponding obligations that cannot be violated with impunity. When attorneys systematically abuse their position to defraud clients and manipulate courts, they forfeit the protection traditionally afforded to professional activities and subject themselves to the full range of civil and criminal remedies available to address organized misconduct.

**Conclusion: Justice Demands Comprehensive Accountability**

In conclusion, this case demands not only compensation for Plaintiff's substantial damages but also the application of every available legal doctrine designed to preserve the integrity of our judicial system and the legal profession. The evidence contained in Exhibits 1-13 demonstrates that Defendants' conduct violated virtually every standard of professional conduct, statutory obligation, and ethical duty that governs attorney behavior. The Court's comprehensive intervention is necessary not only to provide justice for this individual plaintiff but also to send an unmistakable message that such conduct will not be tolerated within our legal system.

The requested relief—encompassing professional negligence, breach of fiduciary duty, consumer protection violations, civil conspiracy, **RICO** violations, **judicial estoppel,** professional conduct sanctions, and comprehensive damages—reflects the extraordinary nature of Defendants' misconduct and the need for equally extraordinary remedies. Only through such comprehensive accountability can the Court restore public confidence in the legal profession and ensure that the privileges accorded to attorneys are not systematically abused to the detriment of clients and the judicial system itself.

This case will serve as a watershed moment in the evolution of attorney accountability, establishing that no amount of procedural sophistication or professional privilege can shield those who systematically corrupt the administration of justice. The Court's intervention here will resonate far beyond this individual case, establishing precedents that will guide future efforts to address sophisticated attorney misconduct and preserve the integrity of our legal system for generations to come.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. **GRANT** judgment in favor of Plaintiff on all counts alleged herein;

2. **AWARD** compensatory damages in an amount to be determined at trial, including but not limited to:

A. Lost opportunity to pursue claims against all available     insurance policies

B.     Financial losses resulting from Defendants' misconduct

C. Costs of litigation necessitated by Defendants' fraudulent conduct

3. **AWARD** punitive damages to deter future misconduct and punish Defendants' egregious conduct;

4. **AWARD** treble damages under ***RICO*** and other applicable statutes;

5. **AWARD** statutory damages under the ***D.C. Consumer Protection Act;***

6. **ORDER** restitution of all amounts by which Defendants were unjustly enriched;

7. **GRANT** declaratory relief establishing Defendants' violations of disclosure obligations and applying ***judicial estoppel*** to prevent further contradictory positions;

8. **AWARD** compensatory fees and costs under applicable statutes and rules;

9.   **GRANT** pre-judgment and post-judgment interest as allowed by law;

*10.* **AWARD** Professional Conduct Sanctions under *DC Rules 8.4(a), (c), and (d);*

11. **ORDER** Fee Disgorgement under *In re Alexei* for compromised legal services;

12. **IMPOSE** Statutory Penalties under *D.C. Code § 31-2403.01* for insurance disclosure violations;

13. **AWARD** Emotional Distress Damages for Defendants' extreme and outrageous conduct;

14. **GRANT** Injunctive Relief preventing future professional misconduct;

15. **ORDER** Professional Responsibility Referrals to appropriate disciplinary authorities;

16. **AWARD** Enhanced Punitive Damages reflecting the aggravated nature of professional misconduct;

17. **GRANT** such other and further relief as justice requires to address this systematic assault on the integrity of the legal profession.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by jury.

Respectfully submitted,

WILBUR HILIGH, PRO SE

9214 Pinehurst Drive

Fort Washington, MD 20744

(301) 312-1558

Smax0277@gmail.com

Date: 07-14-2025

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Complaint for Damages**

was served upon all Defendants by the method(s) indicated below on this

14th day of July, 2025:


☑ U.S. Mail, postage prepaid

[ ] Hand delivery

[ ] Electronic filing system

[ ] Email


WILBUR HILIGH


Justin M. Flint

Eccleston & Wolf PC

1629 K Street, NW

Suite 260

Washington DC  20006

E-Mail: flint@ewdc.com      Attorney

Kennedy Davis

1629 K. Street, NW

Suite 260

Washington DC  20006

E-Mail: davis@ewdc.com      Attorney

Jeffrey P. Brundage

2000 Pennsylvania Avenue, NW

Suite 8001

Washington DC  20006

E-Mail: jeffrey.brundage@carrmaloney.com Attorney

Dennis J. Quinn

Carr Maloney P.C.

2000 Pennsylvania Ave NW

Suite 8001

Washington DC  20006

DUNCAN & HOPKINS, P.C.

11130 Main Street Suite 310

Fairfax, VA 22030- 5009,

McCHESNEY & DALE, P.C.,

4710 Bethesda Ave Suite 205

Bethesda, MD 20814,

McCHESNEY, DUNCAN & DALE, P.C.

8401 Connecticut AVENUE SUITE 1003

CHEVY CHASE, MD 20815,

Defendants



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-004550

**Case Style:** Wilbur Hiligh v. Duncan & Hopkins P.C.  et al.

**INITIAL ORDER**

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/17/2025 | 9:30 AM | Remote Courtroom 519 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Maribeth Raffinan. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1)  Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

     Link: dccourts.webex.com/meet/ctb519

     Meeting ID: 129 705 0412

2)  When you are ready, click "Join Meeting".

3)  You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1)  Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2)  Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1)  For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2)  For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3)  For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.

4)  To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.
- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.
- Look at the camera when you speak and avoid moving around on the video.
- Wear what you would normally wear to court.
- Sit in a well-lit room with no bright lights behind you.
- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote Hearing Sites

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**

---

**Remote Site – 1**

Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

---

**Remote Site – 3**

Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

---



---

**Remote Site – 2**

Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

---

**Remote Site – 4**

Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

---

**If you want to use a remote site location for your hearing**, call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing**, please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1.  Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2.  Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3.  Materials for notetaking, including pen and paper.

\*Safety and security measures are in place at the remote sites.

**Contact information to schedule your remote access computer station:**
Call:  202-879-1900
Email:  DCCourtsRemoteSites@dcsc.gov




# Tribunales del Distrito de Columbia
## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

<table>
<tr>
<td>

**Sito Remoto – 1**

Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

</td>
<td>

**Sito Remoto – 3**

Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

</td>
</tr>
<tr>
<td>

**Sito Remoto – 2**

Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

</td>
<td>

**Sito Remoto – 4**

Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

</td>
</tr>
</table>



**Si desea usar un sitio remoto para su audiencia**, llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales**, como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***
1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
9/4/2025 12:08:02 PM
Superior Court
of the District of Columbia

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA - CIVIL DIVISION

Wilbur Hiligh
                    **Plaintiff**

                                        vs.                    Case No: 2025-CAB-004550

Duncan & Hopkins P.C., et al.
                    **Defendant(s)**

### AFFIDAVIT OF SERVICE

I, Morgan Bassett, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the documents listed herein in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

DOCUMENT(S): Notice of Remote Initial Scheduling Conference, Summons in English and Spanish, and Plaintiff's Complaint for Damages with Exhibits

SERVE TO: Duncan & Hopkins, P.C c/o Justin Michael Flint, Esquire

SERVICE ADDRESS: 11130 Main Street, Suite 310, Fairfax, Virginia 22030

METHOD OF SERVICE: By e-mailing a copy of the documents listed herein on 9/02/2025 at 4:51 PM to the following e-mail address: flint@ewdc.com

A reply from Justin Michael Flint, Esquire was received on 9/02/2025 at 5:16 PM, receipt attached.

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

Executed on _9/03/2025_

Subscribed and sworn to before me by the affiant who is
personally known to me.

_____                                    _____
Jordan Chamberlain                                                                    Morgan Bassett
Notary Public, Prince George's County, MD
                    2/6/2029

JORDAN CHAMBERLAIN
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
MY COMMISSION EXPIRES FEBRUARY 6, 2029

Client Ref Number:
Job #:14060159



---

## Electronic Service of Process

---

**Justin Flint** <flint@ewdc.com>                                    Tue, Sep 2, 2025 at 5:16 PM
To: Morgan Bassett
Cc: Info <info@capitolprocess.com>, Daneisha LaTorre <LaTorre@ewdc.com>, "Kennedy M. Davis" <davis@ewdc.com>

We are authorized to accept service.


Thank you.


Justin




**Justin Michael Flint, Esq.**

**Eccleston & Wolf**

1629 K Street, N.W.

Suite 260

Washington, D.C., 20006

Direct: (410) 576-6941 (ext. 1102)

T: (202) 857-1696, ext. 1102

flint@ewdc.com

www.EcclestonWolf.com





**Admitted in the District of Columbia, Virginia, and Maryland.**